CHARLES SUTRO et al., Appellants, v. A. M. RHODES, Respondent.

County Bonds — Invalidity of Overissue — Negotiable Paper. — The act of March 25, 1868, in relation to the funded indebtedness of Calaveras County, having expressly limited the issuance of bonds for such indebtedness to the sum of one hundred and fifteen thousand dollars, all overissued bonds in excess of said sum are illegal and void, and do not bind the county, though negotiable in form.

Id. — Sale — Good Faith — Warranty — Caveat Emptor — Recovery of Purchase-money. — Where overissued county bonds are sold in good faith, without any express warranty of their legal validity on the part of the vendor, there is no implied warranty thereof, but the rule of *caveat emptor* applies, and the purchaser cannot recover the purchase-money paid.

Id. — Sale of Instrument Purporting Obligation — Construction of Code — Warranty of Good Faith — Knowledge of Vendor — Exclusion of Other Implied Warranties. — The sale of an overissued bond is the sale of an instrument purporting to bind to the performance of an act, within the meaning of section 1774 of the Civil Code, which, as amended in 1874, limits the warranty to the fact that the purchaser has no knowledge of facts tending to prove the instrument worthless, extinct, or invalid for any cause, and, construed in connection with section 1764 of the same code, excludes all other implied warranties.

Id. — Failure of Consideration — Good Faith of Purchaser — Mistake. — The Civil Code excludes any recovery by the purchaser of the purchase-money paid for overissued bonds, upon any theory of a failure of consideration of the bonds, or payment by him therefor under mistake, owing to a purchase of the bonds in good faith, believing them to be valid, and a subsequent discovery of their worthlessness.

Id. — Notice to Purchaser — Power of Municipal Corporation — Record of Bonds — Mistake of Law. — The purchasers of municipal bonds are bound to know the power of the municipal corporation and of its officers by whom the bonds were issued; and as the statute requires all county bonds to be recorded, and the fact of the overissue can be readily ascertained from the numbers of the bonds, any mistake of a purchaser of overissued bonds as to the validity of the bonds is a mistake of law from which he cannot be relieved.

Appeal from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. C. Campbell*, and *Baldwin & Campbell*, for Appellants.

The board of supervisors being limited by the act to preparing bonds to the amount of one hundred and

fifteen thousand dollars, and the fund commissioners only being allowed to issue the same to the amount of one hundred and fifteen thousand dollars, any bonds issued in excess are and must be absolutely void, and of no validity whatever. (*Sutro* v. *Pettit*, 74 Cal. 332; 5 Am. St. Rep. 442; Dillon on Municipal Corporations, secs. 485, 507; *Linden* v. *Case*, 46 Cal. 172; *Wallace* v. *Mayor of San José*, 29 Cal. 181; *El Dorado County* v. *Davison*, 30 Cal. 521; *Robinson* v. *Supervisors of Sacramento County*, 16 Cal. 208; *Foster* v. *Coleman*, 10 Cal. 281; *People* v. *Supervisors etc.*, 11 Cal. 170.) The bonds being absolutely worthless, there was no consideration passed to the plaintiffs for their money, and they are entitled to recover the purchase price from the vendor, upon the ground of the failure of consideration. (*Gompertz* v. *Bartlett*, 24 Eng. L. & Eq. 156; *Smith* v. *McNair*, 19 Kan. 332; *Watson* v. *Cresap*, 1 B. Mon. 195; 36 Am. Dec. 573; *Merriam* v. *Wolcott*, 3 Allen, 259; *Thompson* v. *McCullough*, 31 Mo. 225; 77 Am. Dec. 644; *Young* v. *Adams*, 6 Mass. 185; *Wood* v, *Sheldon*, 42 N. J. L. 421; 36 Am. Rep. 523; *Webb* v. *Odell*. 49 N. Y. 585, 586; *Whitney* v. *Nat. Bank*, 45 N. Y. 304; *Canal Bank* v. *Bank of Albany*, 1 Hill, 289, 290; *Shaver* v. *Ehle*, 16 Johns. 201; *Markle* v. *Hatfield*, 2 Johns. 458, 459; 3 Am. Dec. 446; *Paul* v. *City of Kenosha*, 22 Wis. 260–262; 94 Am. Dec. 598. See *Thrall* v. *Newell*, 19 Vt. 208; 47 Am. Dec. 686; *Bank* v. *Jarvis*, 20 N. Y. 226; *Ross* v. *Terry*, 63 N. Y. 613; *Bell* v. *Dagg*, 60 N. Y. 530; *Ormand* v. *Mason*, 1 Swan, 196; *Dumont* v. *Williamson*, 18 Ohio St. 515; 98 Am. Dec. 186; *Aldrich* v. *Jackson*, 5 R. I. 218; *Terry* v. *Bissell*, 26 Conn. 23; *Hurd* v. *Hall*, 12 Wis. 112–135; *Giffert* v. *West*, 33 Wis. 617; *Snyder* v. *Reno*, 38 Iowa, 329; *Lobdell* v. *Baker*, 1 Met. 193; 35 Am. Dec. 358.) The bonds (so called) were negotiable instruments. (Civ. Code, secs. 3078, 3095.) They were issued without authority, and were false, fictitious, and in legal effect forged. (*Anthony* v. *Jasper Co.*, 100 U. S. 700.) The vendor, by the very act of transferring the instruments, engaged that it was what it purported to be,—the valid obligations of those whose names were upon it,—i. e.,

that it was the valid obligation of the county of Cala-
veras. (1 Daniel on Negotiable Instruments, sec. 670;
*Dumont* v. *Williamson*, 18 Ohio St. 518; 98 Am. Dec. 186;
Story on Promissory Notes, sec. 118; Parsons on Notes
and Bills, 37–39; Edwards on Bills and Promissory
Notes, 291; *Porter* v. *Bright*, 82 Pa. St. 443; *Ellis* v. *Groom*,
1 Stew. 47, 48; *Bankhead* v. *Owen*, 60 Ala. 461; *Swanzey*
v. *Parker*, 50 Pa. St. 441; *Challis* v. *McCrum*, 22 Kan.
125; 31 Am. Rep. 181; *Merriam* v. *Wolcott*, 3 Allen, 259;
*Cabot Bank* v. *Morton*, 4 Gray, 157; *Ross* v. *Terry*, 63
N. Y. 613; *Ledwich* v. *McKim*, 53 N. Y. 312; *Bell* v. *Dagg*,
60 N. Y. 530; *Murray* v. *Judah*, 6 Cow. 491; *Lyons* v.
*Miller*, 2 Gratt. 427; 52 Am. Dec. 128; *Herrick* v. *Whit-
ney*, 15 Johns. 240; *Aldrich* v. *Jackson & Butts*, 5 R. I.
219.) The plaintiff is entitled to recover upon the war-
ranty of the statute, as the bonds allege upon the face of
them that the officers have authority to issue them and
bind the county for the payment of the principal sum,
with interest thereon. (Civ. Code, sec. 1773.) The rule
of *caveat emptor* does not apply. The very possession of
the bonds, claiming them to be property, and offering
them for sale, precluded the idea of their being worth-
less pieces of paper. (*Mays* v. *Callison*, 6 Leigh, 235.)
Then, again, the bonds had attached to them the regular
signatures of the regular officers of the county, whose
duty it was to sign, seal, and issue said bonds, under the
act authorizing them. And the presumption of law was,
that they had regularly performed that duty. (Code
Civ. Proc., sec. 1963, subd. 15; *Weaver* v. *Fairchild*, 50
Cal. 362.) In the absence of anything to put plaintiff
upon his guard as to the invalidity of the bonds, plain-
tiff, as between himself and the vendor of the bonds, had
the right to rely upon the presumption of law that the
officers of the county had only performed their duty,
and that no bonds had been issued by them except such
as they had authority to issue; and upon the whole case
as made by the record, the doctrine of *caveat emptor* does
not apply. (*Porter* v. *Bright*, 82 Pa. St. 444, 445; *Terry*
v. *Bissell*, 26 Conn. 32; *Gompertz* v. *Bartlett*, 24 Eng. L. &

Eq. 156; *Challis* v. *McCrum*, 22 Kan. 123; 31 Am. Rep. 181; *Buck* v. *Doyle*, 4 Gill, 478; 45 Am. Dec. 177, 178; *Webb* v. *Odell*, 49 N. Y. 585.)

*F. J. Solinsky*, and *J. B. Reddick, amici curiæ.*

*Hall & De Vries, August Muenter*, and *John B. Hall*, for Respondent.

There can be no recovery by the appellants here, except it be based upon a warranty, either express — which is a part of the contract — or implied by operation of law, and this warranty must be determined by the provisions of the code. (See Civ. Code, secs. 1765–1777.) In every case to which the appellants have given special prominence in their argument (*Gompertz* v. *Bartlett*, 24 Eng. L. & Eq. 156; *Thrall* v. *Newell*, 19 Vt. 208; 47 Am. Dec. 686; *Smith* v. *McNair*, 19 Kan. 334; *Swanzey* v. *Parker*, 50 Pa. St. 441; *Porter* v. *Bright*, 82 Pa. St. 443; *Challis* v. *McCrum*, 22 Kan. 123; 31 Am. Rep. 181; *Terry* v. *Bissell*, 26 Conn. 24; *Webb* v. *Odell*, 49 N. Y. 585; *Utley* v. *Donaldson*, 94 U. S. 29), the liability of the party charged is determined by the principles of the common law governing the subject of warranty. There was no express warranty of these papers as valid bonds, or bonds at all, valid or invalid. (Civ. Code, sec. 1763; *McLennan* v. *Ohmen*, 75 Cal. 558.) The claim that the delivery of the bonds was the equivalent of an indorsement of them cannot be sustained. (*Littauer* v. *Goldman*, 72 N. Y. 509; 28 Am. Rep. 171.) The law does not imply a warranty that these instruments are valid and binding obligations of the county. (See Civ. Code, secs. 1764, 1767, 1774; *Littauer* v. *Goldman*, 72 N. Y. 515; 28 Am. Rep. 171.) Our statute exempts the vendor without knowledge from liability on an implied warranty, no matter what the extent of the knowledge or want of it by the vendee; and even at the common law this vendee is not in position to claim the benefit of an implied warranty. (*Thrall* v. *Newell*, 19 Vt. 208; 47 Am. Dec. 686.) In the most favorable view for this purchaser, he was equally in fault

with his vendor, and this circumstance is sufficient of itself to deny him the protection of an implied warranty. A buyer cannot avail himself of the principle laid down in *Gompertz* v. *Bartlett*, 24 Eng. L. & Eq. 156, who neglects the performance of some duty connected with the transaction which the law imposes upon him. (*Pooley* v. *Brown*, 11 Com. B., N. S., 566.) The purchaser here forfeited his right to resort to the warranty, if any such right he ever had, by his laches. He was fully informed September 28, 1888, and was content therewith for five months next thereafter. (*Buck* v. *Doyle*, 4 Gill, 478; 45 Am. Dec. 176; 2 Thompson on Trials, sec. 1984; *Nounnan* v. *Sutter Land Co.*, 81 Cal. 1; *Morrison* v. *Lods*, 39 Cal. 381; *Fratt* v. *Fiske*, 17 Cal. 380; *Barfield* v. *Price*, 40 Cal. 535; Benjamin on Sales, sec..452; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Foley* v. *Crow*, 37 Md. 51; *Bailey* v. *Fox*, 78 Cal. 389.) The rule of the right of the purchaser to recover back the price of forged bills or notes has never, anywhere in the United States, been applied to bonds of municipal or *quasi* municipal corporations bearing the genuine seal and signatures of the corporation and its officers acting under color of legislative authority, but which are invalid for want of such authority; but the contrary has always been held. (*Otis* v. *Cullum*, 92 U. S. 447; *Anthony* v. *Jasper County*, 100 U. S. 697; *Orleans* v. *Platt*, 99 U. S. 676.) The appellants are bound by the rule of *caveat emptor*. (*Webster* v. *Haworth*, 8 Cal. 21; 68 Am. Dec. 287; *Anthony* v. *Jasper County*, 100 U. S. 697; Story on Sales, secs. 349, 378, 416; *Harris* v. *Hanover Nat. Bank*, 15 Fed. Rep. 788; *Prince* v. *Overhoiser*, 75 Wis. 646.)

McFARLAND, J.— An act of the legislature was passed March 25, 1868, entitled "An act in relation to the funded indebtedness of Calaveras County, and to provide for the funding of unpaid claims against said county." By this act, fund commissioners were created, and the board of supervisors were authorized to have prepared, executed, and issued bonds of the county in

denominations of one hundred dollars and five hundred dollars, but "not to exceed in all one hundred and fifteen thousand dollars." The bonds were to be signed and sealed in a certain prescribed manner; were to mature and bear interest (with interest coupons attached), as specially provided in the act; and a record of the number, date, and amount of each bond issued was to be entered upon the journal of the board. They were negotiable in form, being payable to a party named, or holder. Under this act, bonds were executed and issued in form as provided therein, to the amount of the said one hundred and fifteen thousand dollars; and afterwards additional bonds, similar in form to the first ones, and executed in the same manner, were issued to the amount of about forty thousand dollars in excess of said one hundred and fifteen thousand dollars. Nine of these latter "overissued" bonds, each of the par value of five hundred dollars, were sold by defendant to plaintiffs on July 18, 1888, for $4,675; and plaintiffs bring this action to recover said last-mentioned sum of money. The court below rendered judgment for defendant, and plaintiffs appeal from the judgment, and from an order denying a new trial.

It is averred in the complaint that at the time of the sale defendant "falsely and fraudulently represented and warranted to plaintiffs that said pretended bonds were good, valid, and legal," and that such representation was made " for the express purpose of cheating and defrauding them"; and that the bonds were not good, valid, and legal bonds of Calaveras County, but were entirely worthless; and that these facts were known to defendant and unknown to plaintiffs. It is further averred that "as soon as plaintiffs ascertained" the worthless character of said bonds they tendered them to defendant, and demanded the repayment of said money, but that defendant refused to accept them or repay the money. The answer admits the sale of the bonds, but denies nearly all the other material averments of the complaint.

The court found that defendant did not make any

false or fraudulent representations "as to the goodness, validity, or legality" of the bonds, and did not warrant the same, nor did he make any representations as to their value; but that he "made the sale of said bonds in good faith, without any representations whatsoever, and without warranty," and that "at no time did the plaintiffs act or rely upon any representations made to them by the defendant in the sale of said bonds by defendant to the plaintiffs." The court also found, in finding 2, "that the said bonds were not worthless, but are good, valid, and legal bonds of Calaveras County, in this state."

The said last-named finding (No. 2) is clearly erroneous. The said bonds were issued, and purport upon their face to have been issued, under said act of March 25, 1868; and by said act the power to issue bonds is expressly limited to the amount of one hundred and fifteen thousand dollars. It is not necessary to discuss the question at length, or to cite authorities to the point that the bonds involved in the case at bar, being an overissue, are invalid; because the point was definitely settled in the recent case of *Sutro* v. *Pettit*, 74 Cal. 332, 5 Am. St. Rep. 442, and the question presented there cannot be distinguished from the one presented here. The said bonds sold by defendant to plaintiffs were therefore invalid as legal obligations of the county of Calaveras.

But we are satisfied that the judgment should be affirmed upon the other findings, notwithstanding the said erroneous finding of the validity of said bonds.

We must take the other findings of the court to be supported by the evidence. The only witnesses examined were the defendant and the plaintiff Gustav Sutro, with whom the transaction occurred. There was a difference between them as to one or two material matters; but as to those matters, it was for the trial court to determine which statement should be taken as correct.

There was therefore no express warranty of the legal validity of the bonds. Neither was there any implied warranty. Section 1764 of the Civil Code provides that,

"except as prescribed by this article, a mere contract of sale or agreement to sell does not imply a warranty"; and none of the other sections of the article applies to the case at bar, except section 1774. And that section not only shuts out any claim of warranty in the present case, but it seems to exclude the authorities marshaled by appellant to the point that upon *some* principle of law — as, for instance, failure of consideration — he ought to recover in this action. The section is as follows: "One who sells or agrees to sell an instrument purporting to bind any one to the performance of an act thereby warrants that he has *no knowledge of any facts* which tend to prove it worthless, such as the insolvency of any of the parties thereto, where that is material, the extinction of its obligations, *or its invalidity for any cause*." The transaction between respondent and appellant was not the assignment of a debt, as the transfer of a non-negotiable obligation is sometimes construed to be; it was the *sale of an instrument* within the meaning of the code, and the section just quoted is the law upon the subject. It seems to be an express declaration and warning to purchasers of such instruments that the rule of *caveat emptor* applies, and that they must examine for themselves, and exercise their own judgment, or take a guaranty.

Outside of our code, and among the general authorities, there is, no doubt, some conflict in the decisions on the question here involved; but the weight of them, we think, supports the conclusion above stated. The supreme court of the United States so held in *Otis* v. *Cullum*, 92 U. S. 447; and it was a case precisely like the one at bar. In that case, the city of Topeka issued bonds under certain acts of the legislature, and sold them to a bank which put them upon the market and disposed of them. Afterwards the courts held that the legislature had no power to pass the acts, and that the bonds were void; and thereupon the purchasers sued the bank to recover the money paid for them, upon the ground of failure of consideration. But it was held that

"as the bank gave no warranty, it cannot be charged with a liability it did not assume." The court, in its opinion, says: "The plaintiffs in error got exactly what they intended to buy, and did buy. They took no guaranty. They are seeking to recover, as it were, upon one, while none exists. . . . . Such securities throng the channels of commerce which they are made to seek, and where they find their market. They pass from hand to hand, like bank notes. The seller is liable *ex delicto* for bad faith; and, *ex contractu*, there is an implied warranty on his part that they belong to him, and that they are not forgeries. Where there is no express stipulation, there is no liability beyond this. If the buyer desires special protection, he must take a guaranty. He can dictate his own terms, and refuse to buy, unless it be given. . . . . It would be unreasonably harsh to hold all those through whose hands such instruments may have passed liable, according to the principles which the plaintiffs in error insist shall be applied in this case." This is the highest authority upon the question; and we do not deem it necessary to review the many other cases cited by counsel for both parties.

In the case at bar, as in *Otis* v. *McCullum*, 92 U. S. 447, the appellants "got exactly what they intended to buy, and did buy"; that is, certain written instruments, in form negotiable, made and signed by the persons, and in the manner and under the law, as stated on their face. (They purported to have been issued under said act of March 25, 1868.) The statute provides for a public record of bonds issued under it, so that it could easily have been ascertained whether the said bonds sold were overissued; and moreover, plaintiffs were bound to know the powers of the municipal corporation and its officers by whom the bonds were issued. (*Sutro* v. *Pettit*, 74 Cal. 332; 5 Am. St. Rep. 442; *Wallace* v. *Mayor of San José*, 29 Cal. 181; *Anthony* v. *Jasper*, 100 U. S. 697.) It appears, also, that plaintiffs were bankers, and dealers in "state, county, and municipal bonds of the state of California," and had the numbers of these bonds in their

office, to which they referred.  And it is found that they did not rely upon any representations made by respondent.  If, therefore, appellants made any mistake as to the validity of the bonds, it was a mistake of law.  Indeed, the whole question involved — that is, whether the said bonds created a legal liability against the county of Calaveras —was a question of law.  Upon that question, lawyers, and judges have differed; and plaintiffs, no doubt, had erroneous views upon the subject.

Judgment and order affirmed.

SHARPSTEIN, J., HARRISON, J., and DE HAVEN, J., concurred.

BEATTY, C. J., concurring.— I concur.  There is a conflict of authority upon the principal question involved in this case, but I think the best-considered decisions support the conclusions reached by Justice McFarland.  If a vendor contracts to deliver goods of a certain description, he must deliver sound articles of that description; and if he fails to do so, there is a failure of consideration for the price paid.  But if a vendor submits specific articles to the inspection and examination of the purchaser; if he conceals no fact' within his knowledge, and makes no false representation; if each party has equal knowledge or means of knowledge respecting every fact affecting the soundness and value of the article, — then, if a price is agreed upon, and a sale made, the purchaser cannot, upon the subsequent discovery that the articles sold were in fact worthless, recover the price paid upon the ground of failure of consideration.  For having got precisely what he bargained for, he cannot say that there has been any failure of consideration.  If he can recover at all, it must be upon the ground of a breach of some implied warranty by the vendor.

Now, in this case, there was no executory contract for the sale of Calaveras County bonds issued under the act of 1868, which would have undoubtedly required the delivery of bonds regularly and lawfully issued under the

act. On the contrary, certain specific bonds purporting on their face to have been issued under the act were offered for sale. The defendant concealed no fact within his knowledge touching their validity, nor did he misrepresent any fact. Everything he knew the plaintiff knew, and if the plaintiff did not know that they were part of an overissue of bonds, it was only because he chose voluntarily to forego the means of knowledge open and easily accessible to him. He therefore got precisely what he bargained for, and he cannot recover the price paid upon the ground of failure of consideration. And since there was no express warranty, he must rely upon such warranties as the law implies from the nature of the transaction.

On this point it seems to me that section 1774 of the Civil Code, especially in view of the clause eliminated *ex industria* by the amendments of 1874, is conclusive against the right to recover.

PATERSON, J., concurring. — I concur in the views expressed by Mr. Justice McFarland. *Young v. Cole*, 3 Bing. N. C. 724, is a case directly in point, and supports the contention of the appellants here, but a different rule has been established in this state. Section 1774 of the Civil Code as originally enacted provided as follows: "One who sells or agrees to sell an instrument purporting to bind any one to the performance of an act thereby warrants the instrument to be what it purports to be, and to be binding according to its purport upon all the parties thereto, and also warrants that he has no knowledge of any facts which tend to prove it worthless, such as the insolvency of any of the parties thereto, where that is material, the extinction of its obligations, or its invalidity for any cause." The code commissioners, in their notes under this section, cite the case of *Young v. Cole*, 3 Bing. N. C. 724. But in 1874 that section was modified by striking therefrom the following clause: "Thereby warrants the instrument to be what it purports to be, and to be binding according

to its purport upon all the parties thereto." I cannot understand what purpose would be subserved by this amendment, unless the legislature intended to change the rule, and to declare that one who sells an instrument like the one in controversy should not thereby be held to have warranted the instrument to be what it purports to be, or binding according to its purport upon the parties thereto.

Nearly all of the cases cited are cases of fraudulent misrepresentation, deceit, or forgery of non-negotiable instruments. As to the latter instruments, the courts seem to treat the assignment of them as an assignment of the *indebtedness*, and not the sale of an instrument like those referred to in section 1774.

GAROUTTE, J., dissenting.—I concur in the opinion of Mr. Justice McFarland as to the invalidity of the bonds, but dissent wherein he concludes that plaintiff purchased at his peril, and is prevented upon the principle of *caveat emptor* from recovering the money paid defendant.

In this case there is no question of fraud practiced by the seller, and no question of negligence involved upon the part of the buyer. Both parties thought these instruments were valid bonds of Calaveras County. It was an honest mistake of fact, and *caveat emptor* never applies to a mistake of fact. If plaintiff's mistake had been a mistake of law,— that is, if Sutro had known at the time of the purchase that these bonds were an overissue,— such knowledge would have defeated his right of recovery; but there can be no mistake of law, unless the facts are known.

The question involved here is not a question of warranty, but a total failure of consideration, the existence of which fact is fatal to all contracts; and this principle has been fully and repeatedly recognized by this court. (*Keller* v. *Hicks*, 22 Cal. 457; 83 Am. Dec. 78; *Peat Fuel Co.* v. *Tuck*, 53 Cal. 305; *Redington* v. *Woods*, 45 Cal. 429; 13 Am. Rep. 190.)

As a case involving the legal principles involved here, we will suppose that one blind man should sell to another blind man a lump of clay, both believing at the time that it was gold; there was no express warranty, and under the sections of the code cited in the prevailing opinion there is no implied warranty upon which to base a recovery of the price paid, yet it must be conceded that the right of recovery exists. If a plaintiff's right of recovery is to be limited only to those cases where there is a violation of an express or implied warranty, then there can be no recovery in this state where one innocent party sells another innocent party a forged or counterfeit bond or note, for, under the provisions of the Civil Code, there is no implied warranty that the instrument is genuine; yet no court to my knowledge, either in this country or England, ever denied the right of recovery in such a case.

In *Redington* v. *Woods*, 45 Cal. 429, 13 Am. Rep. 190, this principle was recognized and recovery had, not by reason of any warranty, but by reason of the fact that the money was paid without consideration, under an innocent mistake, and the court said: " The authorities in support of this view of the question are numerous and uniform, and we have been referred to none to the contrary." Story on Sales, sec. 377, says: " There is a class of cases which it may be well to notice in this connection, and which are usually included under the head of implied warranty, but to which the doctrine of warranty does not properly seem to be applicable; . . . . that is, where the parties suppose themselves to be buying and selling one thing, when in point of fact they are contracting for the purchase and sale of an entirely different thing. . . . . But where there is neither fraud nor an express warranty, the case seems to be one of pure mistake with reference to the subject-matter, and mistake is properly the ground of the seller's liability; but it does not seem that the doctrine of implied warranty would properly apply, nor is it at all necessary to found a right of recovery in the vendee, . . . . for in

matters of pure mistake the doctrine of *caveat emptor* would not seem to apply. . . . . A vendee only warrants by implication the epithet or adjective, but not the sub-stantive." This doctrine is sustained by Benjamin on Sales, secs. 77, 618, 619, 918, 1005; 4 Wait's Actions and Defenses, c. 98, secs. 18, 21; *Wood* v. *Sheldon*, 42 N. J. L. 427; 36 Am. Rep. 523; *Whitney* v. *National Bank of Potsdam*, 45 N. Y. 304; *Terry* v. *Bissell*, 26 Conn. 24; *Paul* v. *Kenosha*, 22 Wis. 599; 94 Am. Dec. 598; *Hurd* v. *Hall*, 12 Wis. 136; and many other cases unnecessary to cite. In the case of *Hurd* v. *Hall*, 12 Wis. 136, Chief Justice Dixon, having first decided that the vendor and vendee contracted under a mistake of fact, says: "I also think the action could be maintained upon the ground of a failure of consideration by reason of the plaintiff's not having obtained what he bargained for; that the in-struments did not answer the description of those the defendant professed to sell or the plaintiff to buy. The instruments assigned, though resembling school-land certificates, were not such certificates at all. They were mere worthless pieces of paper, drawn up in the form of such certificates. The fact that they were signed by the commissioners in their official capacity can make no difference; so long as they were wholly unauthorized to do so, their acts in signing and issuing them under the circumstances were wholly void, and the certificates in that respect were no better than if they had been signed by some other persons, and were sheer forgeries, except so far as recovering back the money already paid was concerned."

The equities existing between the innocent vendor and vendee of invalid municipal bonds, whether those bonds are the skillful work of a forger or the illegal work of fund commissioners, would seem to stand upon the same plane. Such bonds are equally worthless to a vendee, whether conceived in crime or in illegality. Their nullity in both cases consists in want of legal ca-pacity to make them. In this case, the vendor thought that he was selling valid bonds of Calaveras County, and

the vendee thought that he was buying valid bonds of
Calaveras County; but both parties labored under a mis-
take of fact, as they were not valid bonds of Calaveras
County, or bonds at all, but worthless pieces of paper.
The consideration totally failed, and both parties being
equally innocent, they should be restored to their origi-
nal condition prior to the sale; for the vendor has money
which in equity and good conscience belongs to the
vendee.