[S. F. No. 3081.   Department One.—November 10, 1904.]

## J. W. BROWNING, Appellant, v. G. W. McNEAR, Respondent.

SALE—SACKS OF BARLEY—ACCEPTANCE AND RETENTION BY VENDEE—ACTION FOR PRICE—OFFSET—DAMAGE BY RAIN.—Whether a sale of specified sacks of barley be absolute or an executory agreement for the sale thereof, if the vendee, without protest or attempt to rescind, or offer to return the property, accepted, retained and used it, he cannot in an action for the agreed price offset damage caused by the rain to the barley delivered in the absence of a breach of warranty on the part of the vendors.

ID.—AFFIRMANCE OF SALE—ESTOPPEL OF VENDEE.—The acceptance and retention of the property sold by the vendee, in the absence of fraud or breach of warranty, is an affirmance of the sale which renders the vendee liable for the purchase money, and precludes him from alleging that the property is not of the character and quality called for by the contract.

ID.—REMEDY FOR BREACH OF WARRANTY.—Where there is a warranty, and it is discovered after delivery that there has been a breach thereof, the vendee may retain the property, and either sue independently for the breach or may plead it in reduction of damages in an action for the price.

ID.—IMPLIED WARRANTY—SALE BY SAMPLE—SELECTIONS BY VENDEE.—Though under section 1766 of the Civil Code there is an implied warranty, where the vendor makes a sale by sample, that the bulk

is equal to the sample exhibited, yet the sale is not by sample merely, because the vendor knew that the vendee, through his agent, had selected and taken samples after a personal inspection by his agent of the barley sold, unaccompanied by any act on the part of the vendor.

ID.—SOUND AND MERCHANTABLE CHARACTER—ACCESSIBILITY TO BUYER. —An implied warranty that merchandise sold is sound and merchantable exists under section 1771 of the Civil Code only where the merchandise is inaccessible to the examination of the buyer. That section has no application where the merchandise was not only accessible to the buyer, but was in fact inspected and examined by him, through his agent, prior to the contract of sale.

ID.—AGREEMENT FOR PRESENT TRANSFER—QUESTION OF FACT—LIABILITY FOR SACKS NOT DELIVERED.—The existence of an agreement for a present transfer of the sacks sold is a question of fact; and the liability of the vendor for the price of sacks not delivered depends upon the question of fact whether the sale was absolute and the title passed to such sacks.

ID.—DEFERMENT OF PAYMENT TO TIME OF SHIPMENT.—The mere fact that payment for the grain was expressly deferred to the time of shipment, and was to be made only against the shipping receipts, does not conclusively establish a purchase as of that time, or that there was no prior agreement for a present transfer of the property.

ID.—LIMITATIONS UPON AUTHORITY OF AGENT NOT COMMUNICATED.—In determining the question as to what the agreement of sale actually was, limitations as to the general transaction privately placed by defendant, upon the general authority of his agent, not communicated to the plaintiff, cannot, under the circumstances of this case, play any part.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Crane & Rutledge, and Adams & Adams, for Appellant.

The transaction was an absolute sale, under which the title passed to the vendee. (Civ. Code, sec. 1140; *Greenbaum* v. *Martinez,* 86 Cal. 459; *Lassing* v. *James,* 107 Cal. 349; *Newcomb-Buchanan Co.* v. *Cabell,* 10 Bush, 460; *Bradley* v. *Wheeler,* 44 N. Y. 495-502; *Groat* v. *Gile,* 51 N. Y. 431.) The vendee in such a sale must pay the price and take the risk of loss. (2 Kent's Commentaries, 492; Mechem on Sales, sec. 483; *Sanborn* v. *Benedict,* 78 Ill. 304; *Sedgwick*

v. *Cottingham,* 54 Iowa, 512; *England* v. *Forbes,* 7 Houst. 301; *Commonwealth* v. *Hess,* 148 Pa. St. 98;[1] *Hatch* v. *Oil Co.,* 100 U. S.°124; *Joyce* v. *Adams,* 8 N. Y. 201; *Willis* v. *Administrator,* 6 Dana, 48.) There being no breach of warranty, defendant could not offset the damaged condition of the goods in an action for the price. (*Correio* v. *Lynch,* 65 Cal. 273; *Coaply Iron Co.* v. *Pope,* 108 N. Y. 232; *Waeber* v. *Talbot,* 167 N. Y. 48;[2] *Reed* v. *Randall,* 29 N. Y. 358;[3] *McCormick* v. *Sarson,* 45 N. Y. 265;[4] *Beck* v. *Sheldon,* 48 N. Y. 373; *Dutchess County* v. *Harding,* 49 N. Y. 321; *Gaylord Mfg. Co.* v. *Allen,* 53 N. Y. 515; *Mason* v. *Smith,* 130 N. Y. 474; *Gilson* v. *Bingham,* 43 Vt. 410.[5]) Even if the contract was executory, the acceptance and retention of the goods would prevent an offset in an action for the price, where there was no fraud for breach of warranty. (*Coaply Iron Co.* v. *Pope,* 108 N. Y. 232; 21 Am. & Eng. Ency. of Law, 1st ed., p. 562, and notes; *Goodhue* v. *Batman,* 8 Me. 116; *Haase* v. *Nonnemacher,* 21 Minn. 486; *Defenbaugh* v. *Weaver,* 87 Ill. 132; *Carondelet Iron Works* v. *Moore,* 78 Ill. 69; *Locke* v. *Williamson,* 40 Wis. 377.) There was no sample furnished by the plaintiff, and where the buyer himself inspected the bulk, or had an opportunity to do so, there was no implied warranty either from sale by sample or under section 1771 of the Civil Code. (*Byrne* v. *Jansen,* 50 Cal. 624; *Bernard* v. *Kellogg,* 10 Wall. 383; *Selser* v. *Roberts,* 105 Pa. St. 242;[6] *Hargous* v. *Stone,* 5 N. Y. 73.) An agent's authority cannot be limited by instructions not communicated. (*Whitton* v. *Sullivan,* 96 Cal. 480; *Stockton Combined Harvester Works* v. *Glens Falls Ins. Co.,* 98 Cal. 557.)

Chickering & Gregory, for Respondent.

The title did not pass until the shipping receipt reached the bank and the draft was paid, under the manifest intention of the parties. (*Blackwood* v. *Cutting Packing Co.,* 76 Cal. 212; *Ramish* v. *Kirschbraun,* 107 Cal. 659;[7] *Dows* v. *National Exchange Bank,* 91 U. S. 618; *Bank of Rochester* v. *Jones,* 4 N. Y. 497;[8] *Newcomb* v. *Boston etc. R. R.,* 115 Mass.

---

[1] 33 Am. St. Rep. 810

[2] 82 Am. St. Rep. 712.

[3] 86 Am. Dec. 305.

[4] 6 Am. Rep. 80.

[5] 5 Am. Rep. 289.

[6] 51 Am. Rep. 205.

[7] 9 Am. St. Rep. 199.

[8] 55 Am. Dec. 290.

231; Benjamin on Sales, sec. 381.)    Parties dealing with an
agent are bound to inquire as to the extent of his authority.
(*Mudgett* v. *Day,* 12 Cal. 139; *Blum* v. *Robertson,* 24 Cal.
127; *Mitrovich* v. *Fresno Fruit Co.,* 123 Cal. 379.)    There was
an implied warranty by sample (Civ. Code, sec. 1766), which
the court found as a fact; and a sale by sample is a question
of fact.    (Am. & Eng. Ency. of Law, 2d ed., title "Implied
Warranty," sec. 1228.)    There was also an implied warranty
that the barley was sound and merchantable, which warranty
refers to the time of delivery.    (*Shearer* v. *Park Nursery Co.,*
103 Cal. 418;[1] *Hughes* v. *Bray,* 60 Cal. 284; 28 Am. & Eng.
Ency. of Law, p. 738; *Fisk* v. *Roseberry,* 22 Ill. 288; *Howard*
v. *Hoey,* 23 Wend. 350;[2] *Kohl* v. *Lindley,* 39 Ill. 203.[3])

ANGELLOTTI, J.—The plaintiff brought this action to
recover $6,632.27 alleged to be the balance due him for 21,277
sacks of barley sold and delivered by him to defendant, at the
agreed price of 81¼ cents per one hundred pounds.

The defendant, who had received, accepted, and used 20,445
sacks thereof, claimed that the original transaction was no
more than an executory agreement for the sale of the 21,277
sacks, at the price named, and alleged, by way of counter-
claim, that "said barley was to be delivered to said defendant
free on board barge at Eddy's Landing, California, in good
order and condition, and equal to a sample theretofore shown
said defendant by said plaintiff"; that defendant agreed to
pay such price for the barley "when so delivered on board
barge and in said condition"; that plaintiff delivered only
20,445 sacks; and that the portion so delivered "was, prior
to the delivery of said barley upon said barge, seriously dam-
aged by rain and other causes, so that when placed on said
barge the same was greatly inferior in quality to said sample
and was not merchantable barley"; and that by reason of
said damaged condition of said barley, defendant suffered
damages in the sum of five thousand dollars.    He, therefore,
asked that judgment be rendered against him for $1,632 only.

The trial court found that the agreement between the par-
ties was executory in its nature; that "it was understood by
both parties that said grain was purchased and was to be

[1] 42 Am. St. Rep. 125.                [3] 89 Am. Dec. 294.
[2] 35 Am. Dec. 572, and note.

paid for only against shipping receipts to be thereafter furnished by plaintiff''; that at the time of the transaction, October 9, 1899, the barley was in good order and condition and equal to samples which had been obtained by the purchaser; that both parties "understood . . . that the barley was being purchased by such samples"; that after October 9th, and before the shipping, it was damaged to the extent of $4,182.96 by rain and mud, so that when it was delivered on board the barges it was not in good order and condition or equal to the samples referred to and was not merchantable barley; that 832 sacks, weighing 84,864 pounds, have never been delivered, but are still in plaintiff's warehouse.

The court deducted from plaintiff's claim the said sum of $4,182.96 on account of the damage done by the rain to the barley delivered, and also the sum of $689.52 for the 832 sacks still in plaintiff's warehouse, and gave judgment in his favor for $1,759.79, interest, and costs of suit.

Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

It will be seen from the foregoing that the question here is, except as to the 832 sacks of barley that are now in plaintiff's warehouse, whether or not the defendant, having accepted and retained and used the property, can in this action for the agreed price recover by way of counterclaim the amount of damage done to the property by rain between the time of the transaction, October 9, 1899, and the time of the loading of the property upon defendant's barges.

If the transaction of October 9, 1899, amounted to an absolute sale of the property, and the title thereto then passed to defendant, concededly plaintiff would in no way be liable for the damage.

It appears to be equally clear that if the transaction amounted only to an executory agreement of sale of a specific identified lot of barley, and the defendant, without protest, accepted, retained, and used the property, without attempt to rescind, or offer to return, he cannot in this action for the price offset the damage caused by the rain, in the absence of a breach of warranty on the part of the vendor. An acceptance of property by the vendee, in the absence of fraud or breach of warranty on the part of the vendor, renders him liable for the price agreed on, and precludes him from alleg-

ing that the property is not of the character and quality called for by the contract. This must necessarily be so, in view of the fact that by such action he affirms the sale, and in the absence of fraud his only possible cause of action against the vendor in this connection must arise from some undertaking on the part of the vendor as to the condition or quality of the property. The authorities appear to be without conflict as to this. (See 24 Am. & Eng. Ency. of Law, 2d ed., p. 1092, and cases there cited.) It is the law of this state, as it is generally elsewhere, that where there is a warranty, and it is discovered after delivery that there has been a breach thereof, the vendee may retain the property and bring an action for the breach of the warranty, or may plead the breach in reduction of damages in an action brought by the vendor for the purchase money. (*Snow* v. *Holmes,* 71 Cal. 142, 149; *Polhemus* v. *Heiman,* 45 Cal. 573, 579.[1]) This rule, which is vigorously asserted by defendant, is not disputed by plaintiff, but its application to this case is dependent upon the question as to whether or not there was a warranty. If there was not a warranty, defendant was not entitled in this action to any offset on account of the damage caused by the rain to the property that he has accepted and retained, and this is true regardless of the question as to whether the transaction of October 9, 1899, amounted to an absolute present sale or only an executory agreement to sell. It was undoubtedly upon this theory that defendant alleged in his counterclaim that the ''barley was to be delivered on board barge . . . in good order and condition and equal to a sample theretofore shown said defendant by said plaintiff.''

Passing for the present the question as to whether or not the transaction of October 9th amounted to an absolute present sale of the barley, we shall consider the question as to warranty.

The superior court failed to find that there was any express undertaking on the part of plaintiff as to the condition of the property at the time of the transaction of October 9th, or as to what condition it should be in at the time of delivery. The evidence was without conflict to the effect that there was no such express undertaking on the part of plaintiff. In fact, the only evidence as to any express understanding on the sub-

[1] 13 Am. Rep. 204.

ject was that as to what occurred in the Bank of Colusa on October 9th, when the transaction was being there closed, where, according to the evidence of defendant's agent, Mr. Hickok, who negotiated the purchase, Mr. Harrington, an officer of the bank, said: "Mr. Browning, I suppose you sold this barley, so if it gets wet you would not be the loser," and Browning replied, "Yes, I have sold the barley to Mr. Mc-Near; they have to look out for the weather," and Hickok said, "You need not be worrying about the weather, because I think the barge will be there in a day or two and get it, and there is no indication of rain to-day." This evidence is more than corroborated by the evidence of Harrington and Browning, and it would be difficult under such circumstances to find that there was any express agreement or warranty on the part of plaintiff as to the condition in which the barley should be at the time of delivery. There is no claim that there was any express warranty as to its condition at the time of the transaction.

The question then remains as to whether there was any implied warranty. In this connection the defendant relies upon the finding of the trial court to the effect that at the time of the transaction, the barley was equal to samples which had been obtained by the purchaser, and that both parties understood that the barley was being purchased by such samples, as showing a sale by sample, and therefore an implied warranty, under section 1766 of the Civil Code, which provides, in accord with the general rule, that "One who sells or agrees to sell goods by sample, thereby warrants the bulk to be equal to the sample."

If we concede that the finding of the court above referred to is a finding that the plaintiff agreed to sell this barley "by sample," within the meaning of this section of the code, it must be held that the finding is without support in the evidence.

No sample of this barley was at any time exhibited or furnished by the plaintiff. The barley lay in plaintiff's yard, and the defendant's agent, Hickok, had examined it carefully, and on two occasions samples were taken for him by another party under his directions, and, so far as appears, these samples were taken without the presence of plaintiff and without his knowledge. It does not even appear that plain-

tiff ever saw the samples, Hickok stating that he was not positive that he ever showed them to him. All that plaintiff knew at the time of the transaction was, that it was customary for grain-buyers to sample for themselves all grain that was for sale; that Hickok had in fact selected and taken for himself samples of his barley, had sent a set of the same to his principal, the defendant, and retained a set in his office, and that McNear was acting entirely upon the *representations of his agent, Hickok,* to the effect that the samples taken and forwarded by such agent were in fact fair samples of the bulk of the barley. There was no act of any kind on the part of plaintiff conveying the slightest intimation on his part as to the correctness of the samples.

It would be a novel application of the rule of warranty arising from sale by sample to hold that a vendor is to be held responsible for a sample that he has never seen or exhibited, and concerning which he has made no representation, and which was selected and taken by the purchaser himself or his agent upon an inspection of the property. On a sale by sample the law implies the warranty that the bulk is equal to the sample upon the theory that by his acts and representations the vendor assures the vendee that such is the fact. It says that where one makes or agrees to make a sale "by sample," such act on his part is a representation that the bulk is equal to the sample, an affirmation that the specimen exhibited is a fair sample of the bulk of the commodity. (*Gurney* v. *Atlantic etc. Ry. Co.,* 58 N. Y. 364.) The sale by sample contemplated by the law is one the circumstances of which indicate something in the way of representation by the vendor, to the effect that a sample exhibited fairly represents the bulk. To constitute a sale by sample it must appear that the parties "contracted solely in reference to the sample exhibited, that they mutually understood that they were dealing with the sample as an agreement or understanding that the bulk of the commodity corresponded with it." (*Beirne* v. *Dord,* 5 N. Y. 95;[1] Benjamin on Sales, American note, 7th ed., p. 685; 15 Am. & Eng. Ency. of Law, 2d ed., p. 1227.)

While the question as to whether the circumstances of a transaction show a sale by sample is of course a question of fact for the court or jury, there must be evidence fairly suffi-

[1] 55 Am. Dec. 321, and note.

cient to support a finding of such a sale, or it cannot stand. Taking the evidence in this case in the light most favorable to defendant, it discloses no more than that the plaintiff knew that the defendant, through his agent, had personally inspected the barley, and for the purpose of enabling himself to properly exercise his judgment as to the quality thereof, had himself, through his agent, selected and taken samples, and that he was basing his conclusion as to the quality of the barley and its value upon the result of such inspection and the samples selected by himself. This mere knowledge of plaintiff as to the means used by defendant in determining as to the quality of the barley, unaccompanied by any act of his, could not make the sale one by sample. It was clearly a case where the defendant relied entirely upon his own examination, and took such precautions as he deemed essential to satisfy himself as to the quality of the property, without assistance of any kind from the vendor.

It is further contended that if there was not an agreement to sell by sample, there was an implied warranty that the goods should be sound and in merchantable condition when delivered upon the barge. The theory appears to be that this is the rule as to all executory sales, as distinguished from the rule applicable to executed sales. In this state the question as to whether there is an implied warranty must depend upon the provisions of our Civil Code. Section 1764 thereof provides that "Except as prescribed by this article, a mere contract of sale or agreement to sell does not imply a warranty." (See *Sutro* v. *Rhodes,* 92 Cal. 123.) Except for the section relative to sales by sample, admittedly no provision of that article of the code is applicable to this case, unless it be section 1771. That section provides that "One who sells or agrees to sell merchandise inaccessible to the examination of the buyer, thereby warrants that it is sound and merchantable." This section makes no distinction between executed sales and agreements to sell, and simply means what it says,— viz., that if at the time of the sale or the agreement to sell the merchandise is inaccessible to the examination of the buyer, the warranty that it is sound and merchantable will be implied. It can have no application to this case, for the simple reason that this barley was not only not inaccessible to the examination of the buyer, but was as a matter of fact in-

spected and examined by him, through his agent, prior to the making of the agreement. It must therefore be held that there was no express or implied warranty on the part of plaintiff, or any undertaking on his part as to the condition of the property at the time of delivery, and it follows that defendant was not entitled to set off against the agreed price the damage caused by the rain to such of the barley as was received and accepted and used by him.

Upon the question as to whether the transaction of October 9, 1899, amounted to an absolute sale of the barley, there is some doubt as to whether the evidence supports the finding of the court.

We do not deem it necessary to discuss this question, in view of the fact that the judgment and order must be reversed for the reasons already stated. Whether or not the parties, plaintiff and Hickok, representing defendant, then agreed upon a present transfer of the barley, is a question of fact, the determination of which may well be left to the superior court upon another trial. It is proper to say, however, that the mere fact that payment for the grain was expressly deferred to the time of shipment, and was to be made only as against shipping receipts, does not conclusively establish that the *purchase* was against shipping receipts only, or that there was no agreement for a present transfer of the property. It is also proper to say that in the determination of the question as to what the agreement actually was limitations as to the general transaction privately placed by defendant upon the general authority of the agent, and not communicated to plaintiff, cannot, under the circumstances of this case, play any part.

The *status* of the 832 sacks of barley that have not been taken by defendant from plaintiff's warehouse must depend upon the determination of the question as to whether the transaction of October 9, 1899, was an absolute sale. If the title thereto then passed to defendant, he is liable in this action for the agreed price; otherwise, not.

The judgment and order are reversed and the cause remanded.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.