[S. F. No. 5295.  Department Two.—October 20, 1910.]

## J. W. BROWNING, Respondent, v. G. W. McNEAR, Appellant.

SALE—EXECUTED CONTRACT—PAYMENT AGAINST SHIPPING RECEIPTS—
PRESENT TRANSFER.—In determining whether or not an agreement
was an executed contract of sale, the mere fact that payment for
the property was expressly deferred to the time of shipment, and
was to be made only as against shipping receipts, does not exclusively
establish that the purchase was against shipping receipts only, or
that there was no agreement for a present transfer of the property.

ID.—TITLE WHEN PASSES UNDER SALE.—Under section 1140 of the Civil
Code, the title to personal property, sold or exchanged, passes to the
buyer whenever the parties agree upon a present transfer, and the
thing itself is identified, whether it is separated from other things
or not.

ID.—PAYMENT OR DELIVERY NOT ESSENTIAL.—Whenever the terms of
sale are agreed to, and the bargain is struck, and everything that
the seller has to do with the goods is complete, the contract of sale
becomes absolute, without actual payment or delivery, and the
property and risk of accident to the goods vest in the buyer.

ID.—TRADE MEANING OF EXPRESSION CONTROLLED BY CONTRACT.—What-
ever may be the general trade meaning of the phrase "payable
against shipping receipts," or "payable when shipped," or "payable
f. o. b.," such trade or commercial meaning is always controlled by
the express contract of the parties.

ID.—EVIDENCE SHOWS EXECUTED SALE—DEFERRED PAYMENT OF PRICE.—
In the present case, the evidence is reviewed and held to support the
finding that the agreement in question amounted to an executed sale
of certain barley, which remained at the risk of the buyer from
the time of the sale, although payments therefor were to be made
when the barley was shipped.

ID.—PURCHASE BY AGENT HAVING GENERAL AUTHORITY.—A seller, in
dealing with an agent of a purchaser having general authority to
buy grain, is not affected by any limitation upon the authority of
the agent not communicated to him.

ID.—SUBSEQUENT INSTRUCTIONS TO AGENT.—No instructions from the
purchaser to his agent, after the completion of the sale, could have
any effect upon the rights of the seller.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order refusing
a new trial.  Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Chickering & Gregory, for Appellant.

Adams & Adams, and Thomas Rutledge, for Respondent.

HENSHAW, J.—This is a second appeal after the second trial. The decision of this court upon the former appeal is reported in 145 Cal. 272, [78 Pac. 722]. The pleadings are the same. The findings of the court declare an executed sale upon October 9, 1899, without any warranty express or implied, and declare also that the sale was not by sample. In the opinion rendered upon the former appeal it was said: "Whether or not the parties, plaintiff and Hickok, representing defendant, then agreed upon a present transfer of the barley is a question of fact, the determination of which may well be left to the superior court upon another trial. It is proper to say, however, that the mere fact that payment for the grain was expressly deferred to the time of shipment, and was to be made only as against shipping receipts, does not exclusively establish that the *purchase* was against shipping receipts only, or that there was no agreement for a present transfer of the property."

If the court's findings of an executed sale upon October 9th, with delivery postponed at the purchaser's risk, is supported by the evidence, there is an end of the controversy between the parties on this appeal. The evidence touching this matter was the same upon the former trial as upon this. The court's finding upon the former trial was that the sale was executory. Concerning that finding this court declared: "There is some doubt as to whether the evidence supports the finding of the court." Clearly, therefore, if there was doubt whether the evidence supported the finding of an executory contract, it must be that there was substantial evidence to support a finding of an executed contract, which is the finding upon the present appeal. "The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not." (Civ. Code, sec. 1140.) "When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do

with the goods is complete, the contract of sale becomes absolute, without actual payment or delivery, and the property and risk of accident to the goods vest in the buyer." (2 Kent's Commentaries, p. 492; Mechem on Sales, sec. 483.) The facts established in support of the court's findings are the following: The barley in question was stacked along the river bank in the grain yard owned and operated by plaintiff as a warehouseman in connection with a warehouse situated in the yard. It was weighed and ready for sale and shipment. Plaintiff held the warehouse receipts commonly called "yard receipts" for the barley. These receipts showed the quantity and weight. Upon the day of the sale plaintiff was hauling the barley from the yard into the warehouse. Eight hundred and thirty-two sacks had so been hauled, but upon the completion of the transaction with Hickok, defendant's agent, no more was hauled. Upon that day Hickok inquired what Browning would take for the barley, and Browning stated that his price was 81¼ cents per hundred pounds. Hickok conferred with his principal by telephone. That conversation was not reported to Mr. Browning, but later in the day Hickok told Browning that he would take the barley at that price, and that defendant would send a boat for it and take it from the river bank and warehouse and would pay for it as soon as it was shipped. Browning demurred, desiring payment at the time, but finally agreed that he would accept payment as the barley was shipped. The yard receipts for the barley, as *indicia* of ownership, were delivered to Hickok and accepted by him, and Hickok drew his draft for three thousand dollars in part payment of the barley. Browning testifies to the delivery by him to Hickok and the acceptance by the latter of the yard receipts, and Mr. Hickok's testimony is as follows:—

"Q. What do you say, Mr. Hickok, then in regard to the delivery of the barley on that day as between you and Mr. Browning?

"A. Mr. Browning delivered the yard receipts.

"Q. It is a fact that you did accept those receipts?

"A. I took them, yes, and accepted them."

Whatever may be the general trade meaning of the phrase "payable against shipping receipts," or "payable when shipped" or "payable f. o. b.," the fact remains that such trade or commercial meaning is always controlled by the express

contract of the parties, and in this case the evidence substantiates the finding, not that the sale was to be complete when the barley was shipped, but merely that the payments were to be made when the barley was shipped. Such was Browning's testimony, Mr. Hickok again corroborating it, in the following language:—

"Q. Wasn't the statement that you made to Mr. Browning that you would pay Mr. Browning for this barley as soon as it was shipped.

"A. Yes, sir; I probably made that statement to Mr. Browning.

"Q. Payable when shipped, or against shipping receipts. Which is it? Which did you tell him?

"A. I could not say positively which I told him, but it means one and the same thing."

As further evidencing that the sale was complete and executed, there was direct testimony concerning the party to the sale on whom the loss should fall in the event that the grain was injured by rain before it was taken on to the steamer or barge by defendant. It appears, first, that the time of its removal was wholly a concern of defendant, with which plaintiff had nothing to do, and that with the actual transportation from the yard and warehouse to the barge or steamer plaintiff likewise had no responsibility or concern. At the time of the sale, and in the presence of Mr. Harrington, the cashier of the bank with whom the draft and yard receipts were deposited, Mr. Browning stated: "If the grain got wet, got rained on, it was their (defendant's) loss and not mine," and that Mr. Hickok so understood and agreed. The witness Harrington corroborates this and testifies to Mr. Hickok's assent thereto. Mr. Hickok wrote a letter to his principal to the following effect: "Note what you say about Mr. Browning. There was no memorandums passed between us at the time except the draft I gave him for $3000, the same to be paid when the barley was shipped. (Elements not considered.) At the time I purchased this barley, Mr. Browning was hauling it off the river bank and putting it in the warehouse, and after selling it to me stopped hauling, expecting it would be shipped at once, and thus save all this labor, as it was my understanding that steamer would be after it soon and I so informed him to that effect." Mr. Hickok explains the mean-

ing of the phrase used in his letter "elements not considered" as follows:—

"Q. You mean to say by that that it was purchased regardless of whether or not there would be any damage by rain? Is that what you mean?

"A. Yes, sir.

"Q. Did you so testify?

"A. Yes, sir.

"Q. That is what you meant, was it not, when you said damage by the elements not considered?

"A. Yes, sir."

The finding is thus abundantly supported. Nor can there, we think, be any doubt as to the power of the agent, Hickok, to bind his principal, for Hickok had general authority to buy grain in the vicinity of Colusa, and was the general agent of McNear for such purpose, and any limitation upon his authority not communicated could not, of course, affect a seller in dealing with him as such agent. The new evidence introduced by defendant, which was in the form of a telegram to the agent, was a communication after the completed sale, and therefore of no operative force. The telegram was dated November 4th, and advised that the Browning barley was at Port Costa on the barge and "as transportation company insists upon discharge, will have to be stored for account of Browning. We absolutely refuse to accept it as it is damaged throughout." The same principle applies to the private letter written by McNear to Hickok after the sale was made, to the effect that if the barley was rained upon, Hickok was not to pay Browning for it. It is not contended that any of these instructions antedated the executed sale, and, as said by this court upon the former appeal: "In the determination of the question as to what the agreement actually was, limitations as to the general transaction privately placed by defendant upon the general authority of the agent, and not communicated to plaintiff, cannot, under the circumstances of this case, play any part." (*Whitton* v. *Sullivan,* 96 Cal. 480, [31 Pac. 1115]; *Stockton Combined Harvester Works* v. *Glenn Falls Ins. Co.,* 98 Cal. 557, [33 Pac. 633]; *Ruggles* v. *Am. Central Ins. Co.,* 114 N. Y. 415, [11 Am. St. Rep. 674, 21 N. E. 1000]; Mechem on Agency, sec. 283.)

What has been said answers appellant's contention as to the

832 sacks of barley which were never delivered from the warehouse. The transaction being a completed sale, defendant was liable for the agreed price.

The judgment and order appealed from are, therefore, affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.