[S. F. No. 10115.    In Bank.—October 8, 1923.]

# HART-WOOD LUMBER COMPANY, Appellant, v. V. G. BONALY et al., Respondents.

[1] SALES—DELIVERY—PAYMENT—TITLE—INTENT.—Where a contract calls for payment upon the delivery of goods, or is silent on the subject—when the obligation to make payment at that time will be inferred—title will not pass until the price is paid, unless it is apparent from other provisions of the contract that the intention of the parties thereto is otherwise.

[2] ID.—PAYMENT — RIGHT TO RESELL — TITLE.—Payment is of little importance when from the face of the instrument it appears that the parties intended to pass title irrespective of payment. Thus, where the owner gives to the buyer the right to resell and nothing is said in the agreement as to the time when title should pass, the rule is that title passes with the execution of the instrument, or at least when the time arrives when the buyer is in a position to resell, because the right to resell presupposes the existence of a title which the buyer can pass to the new purchaser.

[3] ID.—CONTRACT TO CUT AND MILL TIMBER — CONSTRUCTION — POSSESSION—TITLE.—Under a contract granting a buyer the right to cut and mill timber for a stated price per cord, and giving him free access to the land "for the purpose of falling, chopping, cutting, sawing or milling the timber thereon, and of handling, transporting, hauling and selling or disposing of said wood or lumber in whatever manner he may see fit," and also giving him the option to store the lumber on the premises after it came from the mill, provided he should pay therefor within seven days, and if not so paid for, then the right of storage would be withdrawn, and further providing that in case of shipments of lumber, shipping receipts or copies thereof were to be deposited with a bank, the furnishing of which receipts being for the purpose of enabling the owners to check the amounts due from the buyer, the possession of and title to the trees when severed from the land passed to the buyer, and the owners at no time had either possession of or title to the personal property into which the cut timber was manufactured.

APPEAL from a judgment of the Superior Court of Mendocino County. R. L. Thompson, Judge. Reversed.

3. Effect of contract with regard to standing timber to pass title to the same, notes, 128 Am. St. Rep. 868; 55 L. R. A. 513; 6 L. R. A. (N. S.) 469; 26 L. R. A. (N. S.) 37; 47 L. R. A. (N. S.) 870.

The facts are stated in the opinion of the court.

Oscar T. Barber for Appellant.

Frank W. Taft for Respondents.

KERRIGAN, J.—This cause having been transferred to the district court of appeal, the judgment was by that court reversed, after which, upon the petition of defendants, a hearing in this court was granted. Upon further consideration we are satisfied that the conclusion arrived at by the district court of appeal is correct, and in this opinion we shall, in the expression of our views, resort freely to the opinion filed by that court.

Plaintiff sued in claim and delivery to recover from defendants the possession of 62,000 feet of lumber of the admitted value of $3,000. A second cause of action for the recovery of a hoist and cables was conceded by the defendants. The trial was had upon the issue of the title and right to possession of the lumber, upon which issue the trial court found in favor of the defendants Booth and Bonaly. The appeal is confined to an attack upon the findings of the trial court.

The facts are that the defendant Booth was the owner of certain timber land located in Mendocino County which the defendant Bonaly had agreed to purchase; that upon his contract for the purchase of the land there remained unpaid to the defendant Booth the sum of $10,000. While the title was in this condition the two defendants Booth and Bonaly, on February 7, 1920, entered into a contract with one Rae, wherein they agreed to sell to Rae a minimum of 2,000 cords of timber located upon said land, and to be selected by Rae, he to pay therefor the sum of $1.50 for every cord of 128 cubic feet "which is cut, sawed, chopped or milled and moved from said property." The payments therefor were to be made to the Bank of Willits to the credit and for the account of the defendant Booth until the total amount of $10,000 had been paid therefor, and thereafter the payments were to be credited to the account of the defendant Bonaly. No time for these payments was fixed except that they were to be made at the same time shipping receipts were deposited with the bank showing shipments through the Northwestern Pacific Railroad from the town of Willits. On the

twenty-eighth day of February, and before the work of cutting the timber commenced, this contract was modified by all the parties thereto to the extent that Rae was given the option to pile any lumber or wood upon the land mentioned for a period of sixty or ninety days, provided that payment therefor should be made within seven days after the same had been piled, and that such payments should be made at the Bank of Willits, as provided in the original agreement, and Rae was also authorized to retain the original shipping receipts and to leave a copy of the same at the Bank of Willits, thus relieving him of the necessity of depositing the original shipping receipts with the bank at the time of payment. By the agreement of the parties of February 7th Rae was given free access to the land "for the purpose of falling, chopping, cutting, sawing or milling the timber thereon, and of handling, transporting, hauling and selling or disposing of said wood or lumber in whatever manner he may see fit." On the thirteenth day of February following the execution of the original contract the defendant Bonaly alone and Rae entered into a private agreement, wherein Rae agreed to deliver to Bonaly, without charge, 25,000 board feet of rough lumber, "sizes and dimensions to be hereafter designated by Bonaly, within the period of one year from the date hereof." On the third day of March following plaintiff and Rae entered into a contract wherein Rae agreed to sell and deliver certain quantities of lumber from the property mentioned to plaintiff, at prices therein specified. Rae also agreed to pile the pine lumber cut by him on the premises until the same should be shipping dry and until he should receive an order from the plaintiff to make shipment. Plaintiff agreed to and did advance to Rae certain sums of money which were to apply on the purchase price of the lumber. Simultaneously with the execution of this contract of March 3d Rae assigned to the plaintiff his contract with the defendants Booth and Bonaly as security for all moneys advanced or to be advanced by the plaintiff to Rae. Rae entered the premises, erected a mill, installed machinery, and proceeded to cut down trees and to manufacture the same into lumber. Nine carloads of this lumber were shipped by Rae to the plaintiff and 62,000 feet were piled at the mill on the premises. The full purchase price due the defendants for trees felled by Rae was paid

to the Bank of Willits, but the payments, with the consent of Rae, were credited to a mortgage account by the cashier of the bank without authority from the defendants. Rae abandoned his contract with the owners on the twenty-sixth day of May, 1920, but work thereunder was continued under the direction of the plaintiff until some time in June, when the defendant Bonaly took 22,000 feet of the lumber so piled at the mill, and the plaintiff was prevented by defendants and their agents from removing any of that remaining. When this situation arose plaintiff abandoned further work under the contract and commenced this proceeding for the recovery of possession of the 22,000 feet which had been taken by Bonaly and the 40,000 feet which still remained piled at the mill.

Upon this appeal the title or right of possession is the question to be determined, and this question rests upon the intention of the parties to the contract of February 7, 1920, between Booth and Bonaly on the one part and Rae on the other, as disclosed therein and by their interpretation of said contract by acts performed under it. As the evidence upon the subject is undisputed, the question to be decided is one of law alone.

[1] According to the settled law in this state, where a contract calls for payment upon the delivery of goods, or is silent on the subject—when the obligation to make payment at that time will be inferred—title will not pass until the price is paid, unless it is apparent from other provisions of the contract that the intention of the parties thereto is otherwise (*Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212 [9 Am. St. Rep. 199, 18 Pac. 248] ; *Browning* v. *McNear*, 158 Cal. 525 [111 Pac. 541]).

[2] But payment is of little importance when from the face of the instrument it appears that the parties intended to pass title irrespective of payment. Thus, where the owner gives to the buyer the right to resell and nothing is said in the agreement as to the time when title should pass, the rule is that title passes with the execution of the instrument, or at least when the time arrives when the buyer is in a position to resell, because the right to resell presupposes the existence of a title which the buyer can pass to the new purchaser. (*Columbus Buggy Co.* v. *Turley & Parker*, 73 Miss. 529, 537 [55 Am. St. Rep. 550, 32 L. R. A. 260, 262,

19 South. 232]; *Leigh Bros.* v. *Mobile & Ohio R. R. Co.,* 58 Ala. 165, 178.)

Under this view of the case, it is not necessary to give consideration to appellant's attack upon the finding of non-payment. The point is that both Rae and appellant had paid to the Bank of Willits for the benefit of respondents all the money which they were required to pay under the contract, but that the cashier of the bank, disregarding the written instructions of the defendant, had wrongfully deposited these moneys to the account of one Shelton, who held a first mortgage upon the property given by the respondent Booth. The cashier insisted that as both Booth and Shelton were clients of the bank and as Booth had authorized the cutting of the timber and the consequent diminution of the security upon his mortgage, he was entitled to see that the money went to the mortgagee. He was permitted to testify that Rae agreed to this, though there was no evidence that when the appellant made subsequent payments to the same bank (these payments would cover the lumber in dispute), it agreed that they should be credited in any other way than as required by the contract. The evidence was that the money was still held by the bank subject to adjustment between Booth and Shelton; but the trial court held that neither Rae nor the appellant had paid the respondents, or either of them, the amounts due under the contract. We cannot say that there was not some evidence to support the finding. But, as we have heretofore said, the matter of payment is not determinative of the case.

In the case of *Browning* v. *McNear,* 158 Cal. 525 [111 Pac. 541], the court held that the mere fact that payment for certain grain was expressly deferred to the time of the shipment did not exclusively establish that there was no agreement for a present transfer of the property, the court saying: " 'When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute, without actual payment or delivery, and the property and risk of accident to the goods vest in the buyer.' "

[3] Under the terms of the contract here in question Rae went upon the premises, erected a mill, felled trees, sawed them into logs, hauled them to the mill, converted them into lumber, and piled or stored the same upon the

premises. The contract conferred upon him the right to handle, transport, and sell the wood and lumber "in whatever manner he saw fit," the owners of the growing timber making no reservation of control, direction, selection, or segregation except the right of inspection for the purpose of checking the shipments. In the modification of the contract the owners gave Rae the option to store the lumber on the premises after it came from the mill, provided he should pay therefor within seven days, but the penalty for nonpayment within that time was not forfeiture of the right to the possession or title to the lumber, but merely withdrawal of the right of storage. Under the original contract no time having been fixed for the storage or piling of the lumber, a reasonable time for that purpose would be presumed. Shipping receipts or copies thereof were to be deposited with the Bank of Willits after the wood or lumber was hauled and delivered for shipment to the Northwestern Pacific Railroad Company. The furnishing of such receipts was clearly for the purpose of enabling Booth and Bonaly to check the amounts due from Rae. There was no provision in the contracts, either express or implied, for withholding title until payment was made. Rae was given the right to go upon the land, select trees, fell them, and by means of his labor and at considerable expenditure convert the logs into wood and lumber, and to sell and dispose of such product, from all of which it is apparent that the parties to the contract intended that the possession of and title to the trees when severed from the land passed to Rae, and that the defendants at no time had either possession of or title to the personal property into which the cut timber was manufactured. While it was competent for them to stipulate for the title to such personal property as security for the payment of their stumpage, they did not do so; and the fact that in moving the manufactured commodities through a prescribed channel Rae was obligated to furnish Booth and Bonaly with copies of the shipping receipts affords no inference of possession or title in the defendants of such manufactured articles. Moreover, the price to be paid by Rae for the trees selected and cut by him was based upon the cord measure of their contents—the measure commonly used for firewood, and not upon the basis of lineal feet, the measure used for mill lumber. This price was but

$1.50 a cord, and all that was due Booth and Bonaly was $180 upon 184,000 feet, which was cut and sold to appellant at from $25 to $30 per 1,000 feet. Thus, the owners of the land were to receive only $180 upon lumber admittedly of the value of over $4,500; they were to be paid about $60 for the 62,000 feet involved in this action, of a value of $3,000.

It follows from what we have said that the findings of the trial court that possession of and title to the lumber in question were in defendants are contrary to the evidence, and the judgment in their favor based thereon must be reversed. It is so ordered.

Waste, J., Lawlor, J., Seawell, J., Richards, J., *pro tem.*, and Wilbur, C. J., concurred.