Filed 1/8/14 unmodified opinion attached

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. HOANG V. NGUYEN, Defendant and Appellant. | A133591 (San Francisco City & County Super. Ct. No. 00214256) ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on December 17, 2013, be modified as follows:

1. On page 11, immediately after the first partial paragraph at the top of the page, insert the following two paragraphs and footnote 10:

> Defendant argues that this distinction cannot be maintained because the statement of facts in *Williams* does not make clear whether the defendant purchased gift cards that were already at the counter, and therefore did not need to be transported prior to purchase, or whether he picked up gift cards located elsewhere in the store and carried them to the counter. Rather, the decision states only that the defendant "bought" the gift cards at the cash register. (*Williams, supra*, 57 Cal.4th at p. 780.) We acknowledge the ambiguity of the court's characterization. However, it is not unusual for gift cards in retail stores to be maintained at the cash register. Further, Justice Baxter, in his dissenting opinion in *Williams*, states "the defrauded cashiers handed defendant the fraudulently purchased (i.e., stolen) [gift] cards,"

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C. and II.D.

suggesting the cards did not come into the defendant's possession until after the transaction was completed.[10] (*Id.* at p. 800.)

While acknowledging the ambiguity in the *Williams* account of events, we nonetheless reject defendant's reasoning. The absence of this distinction would appear to place *Davis* and *Williams* into irreconcilable conflict; defendant, at least, proposes no other way of distinguishing them. Yet *Williams* gives no indication of an intent to overrule *Davis* on this point, and, in the absence of such an intent, our duty is to attempt to apply both decisions in good faith. For the reasons discussed, the nature of defendant's conduct is closer to that of the defendant in *Davis* than that of the *Williams* defendant. Because the factual distinction we propose is consistent with the language of the *Williams* court, we find it a meaningful way to reconcile the two decisions.

[10] Even Justice Baxter's statement is not free of ambiguity, however, because, as defendant points out, "[i]f the defendant in *Williams* had brought a gift card to the counter from a display rack and handed it to the cashier for purchase and activation, there would be a moment when the cashier handed it back."

There is no change in the judgment.

Appellant's petition for rehearing is denied.


Dated:

_____
Margulies, Acting P.J.

2

Filed 12/17/13 (opn. following transfer from Supreme Ct.) unmodified opinion
**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>HOANG V. NGUYEN,<br><br>      Defendant and Appellant. | A133591<br><br>(San Francisco City & County<br>Super. Ct. No. 00214256) |

　　　　Defendant Hoang V. Nguyen was convicted of burglary after he was found by an electronics store security guard to have exchanged more expensive laptop computers for a less expensive printer in the printer's box.  In instructing the jury on theft, the trial court instructed only on the elements of theft by larceny.  Defendant argues his intended crime was not larceny but, if anything, theft by false pretenses.  Because the jury was not instructed on the elements of theft by false pretenses, he contends, his convictions must be reversed.  He also contends the trial court erred in denying a purported *Marsden*[1] motion and in calculating custody credits.  Because we find substantial evidence to support a conviction for attempted theft by larceny and reject defendant's other contentions, we affirm.[2]

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C. and II.D.

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2] This is our second decision in this matter.  Two months after the filing of our initial decision on June 18, 2013, the Supreme Court rendered its decision in *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*).  The court thereafter granted a petition for review of our June decision and simultaneously transferred the matter to us "with

# I. BACKGROUND

Defendant was charged in an amended information, filed May 20, 2011, with second degree burglary (Pen. Code, § 459) and attempted grand theft (Pen. Code, §§ 487, subd. (a), 664). Defendant was alleged to have served one prior prison term. (Pen. Code, § 667.5, subd. (b).)

Defendant entered an electronics store and walked to the computer department. One of the store's loss prevention officers, Angel Gonzalez, watched as defendant opened a box, placed something under it, and left the store. When Gonzalez checked the aisle where defendant had been, he found a printer that had been removed from its box and placed on a bottom shelf behind other items, but he was unable to locate a corresponding empty printer box. Gonzalez took the printer, which retailed for about $100, to the front of the store.

Soon after, defendant reentered the store. Gonzalez again watched on a security camera as defendant returned to the computer department. He saw defendant pick up an opened box and bring out a roll of tape from inside his jacket. At this Gonzalez left his station to confront defendant. When he arrived, Gonzalez found defendant in the process of sealing a printer box. Looking inside, Gonzalez found two laptop computers, which retailed for $450 each. Because of the positioning of the computers in the box, it would have been difficult to tell from the outside that they had been substituted for the cheaper printer. Defendant was detained and arrested.

The trial court instructed the jury on burglary and attempted grand theft by larceny pursuant to CALCRIM Nos. 460, 1800, and 1801. As given by the court, the elements of theft by larceny were (1) defendant took possession of property owned by someone else, (2) defendant took that property without the owner's consent, (3) when defendant took the property he intended to deprive the owner of it permanently, and (4) defendant moved the property and kept it for a period of time.

---

directions to reconsider [our] decision in light of [*Williams*]." (*People v. Nguyen*, review granted Oct. 2, 2013, S212319.)

During deliberations, the jury sent a note asking, "Are theft and defraud the same? Meaning, because his intent to pay for a lesser item, is that the definition of theft?" The court responded, "Members of the jury, please refer to instruction number 1800. The owner's consent cannot be obtained by fraud or deceit." The court explained to counsel, "The Court extrapolated that language from the theft-by-trick instruction. I declined to give the entire theft-by-trick instruction, but I thought that portion was appropriate in the context of this case."

Defendant was found guilty of burglary and the lesser included offense of attempted petty theft, and the court later found the prior prison term allegation to be true. At sentencing, the court dismissed the attempted petty theft conviction and sentenced defendant to a term of four years on the burglary charge.

On the evening after his conviction, defendant sent a letter to the judge, penned by another inmate, complaining his counsel "did little, if anything whatsoever to defend me in my trial" and did not advise him about the risks of trial, instead telling defendant to fight the case because he had a strong defense. Construing the letter as a request for new counsel under *Marsden*, *supra*, 2 Cal.3d 118, the trial court held a hearing and asked defense counsel for a response. Counsel essentially denied the claims, explaining he always advises his clients about the risks of going forward to trial. Defense counsel also denied defendant's charge, made during the hearing, that he did not convey the prosecution's plea offer. During his explanation, counsel noted that all of his conversations with defendant had occurred in English, rather than defendant's native Vietnamese, and speculated this might have resulted in a miscommunication. Somewhat in contradiction, counsel explained defendant's English skills were sufficiently good that "it never occurred" to him defendant might need an interpreter. Based on its observations during trial, the court agreed defendant "has quite a lot of skill in English." It then denied appointment of new counsel, concluding, "I don't find that there is anything that counsel has done that would warrant his being removed or replaced as counsel."

Two weeks later, defendant caused another, similar letter to be written to the court, insisting he was never told of a plea offer. Finding the charges identical to those resolved earlier, the court denied relief without a hearing.

## II. DISCUSSION

### A. *Substantial Evidence to Support the Burglary Conviction*

Defendant contends the evidence did not support a burglary conviction based on intent to commit larceny, the theory of theft on which the jury was instructed.[3] He argues the evidence supports a conclusion he intended to commit, if anything, theft by false pretenses by disguising the laptop computers in the printer box, paying the stated price for the printer at the sales counter, and, contrary to the theory of larceny, "tak[ing] the laptops from the store *with* consent." We review defendant's conviction for substantial evidence to support each of the elements of intent to commit theft by larceny. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1172.)

The statutory crime of theft is comprised of several different common law crimes, including embezzlement, theft by larceny, theft by trick or device, and theft by false pretenses. (*People v. Nazary* (2010) 191 Cal.App.4th 727, 740 (*Nazary*); *People v. Cuellar* (2008) 165 Cal.App.4th 833, 837.) In 1927, these common law crimes were consolidated in Penal Code section 484 into a single statutory crime. (*People v. Gomez* (2008) 43 Cal.4th 249, 255, fn. 4.) "The purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. Indictments and informations charging the crime of 'theft' can now simply allege an 'unlawful taking.' [Citations.] Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." (*People v. Ashley* (1954) 42 Cal.2d 246, 258 (*Ashley*).)

---

[3] A person who enters a building with the intent to commit theft is guilty of burglary. (See *People v. Parson* (2008) 44 Cal.4th 332, 354.)

4

The simplification envisioned by the Legislature has not been realized. Rather than following the lead of the Legislature and collapsing the disparate theories of theft into a single crime, the courts have maintained their separate existence. As noted in *Nazary,* " '[a]lthough the offense of theft has been substituted for the offenses of larceny, embezzlement and obtaining money or property by false pretenses, no elements of the former crimes have been changed. The elements of the former offenses of embezzlement and larceny and the distinction between them' continue to exist." (*Nazary, supra*, 191 Cal.App.4th at p. 741.) As a result, *Ashley*'s anticipated general jury verdict of "unlawful taking" has not materialized.[4] Reported decisions suggest juries continue to be instructed on the elements of the individual theories, rather than being asked to render a general verdict of theft. Further complicating matters, the trial judge must instruct on the proper theory of theft, since "the [theft] offense shown by the evidence must be one on which the jury was instructed and thus could have reached its verdict."[5] (*People v. Curtin* (1994) 22 Cal.App.4th 528, 531.) Because California courts have chosen, in the words of *Ashley,* to retain "[t]he elements of the several types of theft included within [Penal Code] section 484" (*Ashley, supra*, 42 Cal.2d at p. 258), the technicalities of pleading and proof that the Legislature hoped to eliminate in enacting section 484 remain.

The separate theories of theft are largely "aimed at different criminal acquisitive techniques." (*Ashley, supra,* 42 Cal.2d at p. 258.) Theft by larceny, the theory on which the trial court instructed the jury, "is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away. [Citations.] The act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking freely and unconditionally or the taker has a legal right

---

[4] Judging from both *Ashley* and *People v. Nor Woods* (1951) 37 Cal.2d 584, a general theft instruction and verdict was used by some trial courts in the past, but the practice has not survived.

[5] This principle has been the subject of recent controversy. (Compare *People v. Fenderson* (2010) 188 Cal.App.4th 625, 637; *People v. Beaver* (2010) 186 Cal.App.4th 107, 125.)

5

to take the property." (*People v. Davis* (1998) 19 Cal.4th 301, 305, fn. omitted (*Davis*).) Because possession of the stolen item must be gained without the owner's consent, larceny is classically a crime of stealth. Given the "carrying away" requirement, known as "asportation," it necessarily applies to the theft of tangible items. Embezzlement is characterized by the wrongful taking of property voluntarily entrusted. It therefore features acquisition by breach of trust. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 813–814.)

The two remaining theories, theft by trick or device and theft by false pretenses, are crimes of deception, involving the taking of property of another after consent to its possession has been obtained by fraud or deceit. The two are similar in substance, except that with theft by trick, the property owner transfers only possession of property, whereas with theft by false pretenses the owner transfers both possession and ownership. (*People v. Traster* (2003) 111 Cal.App.4th 1377, 1387.) In addition, a conviction for theft by false pretenses is generally held to have "a special corroboration requirement" not applicable to theft by trick or device. (*People v. Curtin, supra,* 22 Cal.App.4th at p. 531; see *People v. Beaver, supra*, 186 Cal.App.4th at p. 123; *People v. North* (1982) 131 Cal.App.3d 112, 118 ["The necessity of corroboration distinguishes false pretenses from trick and device . . . ."].) Although theft by trick or device and false pretenses are often applied to the taking of money or intangibles, which are less susceptible of asportation,[6] the elements of the two offenses do not limit their application to intangibles. (See *Perry v. Superior Court* (1962) 57 Cal.2d 276, 283 [elements of theft by false pretenses not restricted to any particular type of property].)

In *Williams, supra*, 57 Cal.4th 776, the Supreme Court explained the evolution of the distinction between larceny by trick and theft by false pretenses. Larceny by trick, the first to evolve, was recognized in English courts in the late 18th century. As noted

---

[6] See, e.g., *Ashley, supra*, 42 Cal.2d at pages 258–259 (theft by false pretenses of cash); *People v. Bell* (2011) 197 Cal.App.4th 822, 827–828 (theft by false pretenses of a leasehold interest); *People v. Beaver, supra*, 186 Cal.App.4th at page 121 (theft of medical services).

above, larceny requires a trespassory taking, i.e., one without the victim's consent. Although, as *Williams* observed, "a trespassory taking is not immediately evident when larceny occurs 'by trick' because of the crime's fraudulent nature," the common law courts brought the new crime within larceny by holding "that a property owner who is fraudulently induced to transfer possession of the property to another does not do so with free and genuine consent, so 'the one who thus fraudulently obtains possession commits a trespass . . . .' " (*Id.* at p. 783.) The same legal presumption was not indulged if the crime involved the fraudulently induced transfer of title as well as possession. According to *Williams*, "[u]nder the common law, if title was transferred, there was no trespass and hence no larceny. [Citations.] The theory was that once title to property was voluntarily transferred by its owner to another, the recipient owned the property and therefore could not be said to be trespassing upon it." (*Id.* at p. 784.) Hence the differentiation of the crime of theft by false pretenses. If a defendant fraudulently obtains title to property as well as possession, he or she is not deemed to have obtained the property without the owner's consent, thereby precluding a finding of larceny. Yet he or she might still have committed theft as defined by false pretenses, since that form of theft is defined not to require a taking without consent. (*Ibid.*)

Despite their different theoretical underpinnings, the only substantive difference between these two crimes is their result. If the defendant used fraud to gain possession of stolen property without gaining title, the crime is larceny by trick; if the defendant gained both possession and title, or perhaps only title, the crime is theft by false pretenses. (See 3 LaFave, Substantive Criminal Law (2d ed. 2003) §§ 19.2(e), 19.7(d), pp. 68–69, 123.) Yet because of those different theoretical underpinnings, it cannot be determined whether, in the view of the law, the taking involved in a particular theft by deception occurred with or without the victim's consent until it is known whether the defendant gained actual ownership of the property or merely possession.

The distinctions between these crimes have, over time, become blurred. An illustrative example, particularly relevant to our particular situation, is *Davis, supra*, 19 Cal.4th 301. In that decision, the defendant took a shirt from its hanger in a

7

department store, carried it to the sales counter, falsely claimed to have purchased it earlier, requested a refund, and was issued a voucher for credit in the store. By the time the defendant approached the cashier, however, the store's security guards had discovered his activities. While the cashier issued the voucher, she did so at the guards' instruction and with their awareness of the intended crime. (*Id.* at p. 303.) Because the defendant had intended to use deception to obtain both possession and ownership of the credit voucher, his crime would appear to have been theft by false pretenses, but he was convicted of larceny.

Before the Supreme Court, in an effort to demonstrate he lacked the intent to steal, the defendant sought to divide his crime into two acts: (1) his removal of the shirt from its hanger and taking it to the cashier and (2) his false representation to the cashier and acceptance of the voucher. He then argued that the element of trespass was absent because the store issued the voucher while aware of his fraud. In affirming the larceny conviction, the court held that the defendant's argument "focuses on the wrong issue of consent . . . . [¶] . . . The question is whether [the store] consented to defendant's taking the shirt in the first instance." (*Davis, supra*, 19 Cal.4th at p. 306.) Disregarding the latter portion of the transaction, the court found trespass merely in the defendant's taking the shirt from a hanger with the intent to steal it. Although recognizing department stores are ordinarily presumed to consent to customers' carrying items for sale within the store, *Davis* found no consent to such transport if committed with a larcenous intent: "[A] self-service store . . . impliedly consents to a customer's picking up and handling an item displayed for sale and carrying it from the display area to a sales counter with the intent of purchasing it; the store manifestly does not consent, however, to a customer's removing an item from a shelf or hanger if the customer's intent in taking possession of the item is to steal it." (*Ibid.*)

Notwithstanding the similarity of defendant's intended crime and that in *Davis*, defendant argues that *Williams* requires a conclusion he intended to commit theft by false pretenses. The defendant in *Williams* used a credit card that had been "re-encoded with a third party's credit card information" to purchase a gift card from a novice Walmart

8

cashier. (*Williams, supra*, 57 Cal.4th at p. 780.) The defendant was eventually confronted by security guards, who pointed out to him that the number on his credit card did not match the credit card number on the sales receipt. When the guards attempted to detain the defendant, he pushed past them and ran. He was ultimately apprehended and convicted of robbery, burglary, theft by false pretenses, and other crimes. (*Ibid*.) In the Supreme Court, the defendant contended his robbery conviction should be reversed because robbery requires theft by larceny, not false pretenses. (*Id.* at p. 781.)

In explaining its acceptance of the defendant's position, *Williams* relied in part on robbery's requirement of a trespassory taking, which is absent, as discussed above, in a theft by false pretenses. "[T]heft by false pretenses involves the *consensual* transfer of possession as well as *title* of property; therefore, it cannot be committed by trespass. . . . [¶] . . . [D]efendant did not commit larceny. Walmart, through its store employees, consented to transferring title to the gift cards to defendant. Defendant acquired ownership of the gift cards through his false representation, on which Walmart relied, that he was using valid payment cards to purchase the gift cards. . . . Because a 'felonious taking,' as required in California's robbery statute [citation], must be *without the consent* of the property owner, . . . and Walmart *consented* to the sale of the gift cards, defendant did not commit a *trespassory* (nonconsensual) taking, and hence did not commit robbery. Moreover, unlike the offense of larceny by trick, in which a defendant's fraud vitiates the consent of the victim as a matter of law, the acquisition of title involved in the crime of theft by false pretenses precludes a trespass from occurring." (*Williams, supra*, 57 Cal.4th at pp. 788–789.)

Defendant argues the crime he attempted to commit was theft by false pretenses, rather than larceny, because it would have resulted in his obtaining title to the laptop computers, just as the defendant in *Williams* was held to have gained title to the fraudulently obtained gift card.[7] We recognize that, as defendant contends, he could be

---

[7] *Williams* provided no explanation for its conclusion the defendant had gained both title and possession to the gift card, but we assume an ordinary retail sale constitutes

9

viewed as having committed theft by false pretenses had he managed to consummate the crime he intended to commit. Nonetheless, we are constrained by *Davis* to find a larceny in these circumstances.[8] Like the defendant in *Davis,* defendant here contemplated a two-step crime. (*Davis, supra*, 19 Cal.4th at p. 305.) Initially, he placed the laptops in the printer box. Then he intended to take the box to the cashier, pay for a printer, and leave. In arguing for theft by false pretenses, he focuses on the latter portion of the crime, in which he intended to fool the cashier into thinking he was purchasing a printer. As *Davis* held, however, this ignores the wrongful nature of his initial conduct in removing the laptops. While a retail store ordinarily is deemed to consent to its customers' handling of the goods for sale, *Davis* holds that such consent does not extend to handling them with the intent of stealing. (*Id.* at p. 306.) Under this view, defendant's crime was ordinary larceny, committed when he picked up the laptops with wrongful intent.

The same situation did not arise in *Williams.* In contrast to defendant, the defendant in *Williams* did not take possession of the store's property in the course of the crime. He carried his own credit card to the cashier's station, and he was not issued a gift card until the conclusion of the transaction. By the time he had possession of property of the store, the crime was complete. Accordingly, there was no opportunity for the *theft by larceny that, under Davis, occurs when a would-be thief first picks up goods for sale with*

---

a transfer of title as well as possession. (See, e.g., *Browning v. McNear* (1910) 158 Cal. 525, 526.)

[8] *Williams* did not attempt to reconcile its holding, that a defendant who uses a fraudulent credit card to purchase a gift card has committed theft by false pretenses, with that of *Davis,* that a defendant who fraudulently exchanges a shirt for a credit voucher has committed larceny. Yet *Williams* cited *Davis* for the principle that " 'consent . . . procured by fraud . . . is invalid and the resulting offense is commonly called larceny by trick . . . . ' " (*Williams, supra*, 57 Cal.4th at p. 784), and it did not disapprove *Davis* in any way. We therefore assume *Davis* continues to constitute binding authority.

*the intent of stealing them*. The crime in *Williams* was therefore unequivocally a theft by false pretenses, rather than a crime that could be categorized in either way.[9]

Because defendant's conduct satisfied the elements of theft by larceny as defined by the Supreme Court in *Davis,* the jury's implicit finding that defendant entered the store with the intent to commit theft, and therefore his conviction for burglary, was supported by substantial evidence.

**B. *Failure to Instruct on Theft by False Pretenses***

Defendant contends the trial court erred in instructing the jury on the wrong theory of theft. We rejected the premise for this argument in the preceding section by holding that his conduct could have constituted theft by larceny. In any event, any such error was harmless, since an instruction on theft by false pretenses merely would have added another theory of theft on which the jury could have convicted him. (*People v. Traster*, *supra*, 111 Cal.App.4th 1377, 1390.) Because his conduct satisfied the elements of attempted theft by larceny, defendant's right to have a jury find the elements of his crime was not violated by the omission of an instruction on theft by false pretenses. (Cf. *People v. Beaver, supra*, 186 Cal.App.4th at pp. 124–125 [defendant's jury trial right denied when his conduct did not constitute larceny and no instruction was given on false pretenses].)

Defendant also contends the court's response to the jury's question was improper. For the reasons discussed above, however, the court's response was a correct statement of the law. A victim's valid consent to a taking of his or her property cannot be obtained by fraud. (*People v. Brock, supra,* 143 Cal.App.4th at p. 1275.) While the principle was

---

[9] There is no requirement that a particular theft qualify only under a single theory. On the contrary, several decisions have found the same conduct to constitute theft under more than one common law theory. (E.g., *Nazary, supra,* 191 Cal.App.4th at pp. 741–742 [same conduct constitutes both embezzlement and theft by larceny]; *People v. Fenderson, supra,* 188 Cal.App.4th at p. 641 [same]; *People v. Cuccia* (2002) 97 Cal.App.4th 785, 796–797 [same conduct constitutes both theft by false pretenses and embezzlement].)

taken by the trial court from an instruction on theft by trick or device, the same principle applies to theft by larceny.  (*Ibid.*)

## C.  *Defendant's Purported* **Marsden** *Motions*

Defendant next contends the trial court erred in failing to conduct an adequate inquiry under *Marsden* into his claims of ineffective assistance of counsel and in failing to grant him new counsel.

The need for a *Marsden* hearing arises "[w]hen a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation." (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484.)  A request for substitution of appointed counsel can be made both before and after trial.  "[T]he standard expressed in *Marsden* and its progeny applies equally preconviction and postconviction." (*People v. Smith* (1993) 6 Cal.4th 684, 694.)

When an appropriate request is made, " 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of [the attorney's] inadequate performance.' " (*People v. Streeter* (2012) 54 Cal.4th 205, 230.)  " ' "A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.] . . . [¶] 'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.]  'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' " (*Ibid.*)

"Although no formal motion is necessary [to trigger the obligation to conduct a hearing under *Marsden*], there must be 'at least some clear indication by defendant that he wants a substitute attorney.' " (*People v. Mendoza* (2000) 24 Cal.4th 130, 157; see also *People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.)  In *People v. Sanchez* (2011) 53 Cal.4th 80, the Supreme Court addressed the common practice of appointing "conflict" counsel when a *Marsden* request is made.  In the course of its decision, the court reiterated that a *Marsden* hearing is required only when "there is 'at least some

clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' " (*Sanchez*, at pp. 89–90.) In a footnote, the court expressly disapproved a series of cases decided by the appellate court to the extent they "incorrectly implied that a *Marsden* motion can be triggered with something less than a clear indication by a defendant" or his counsel that the defendant " 'wants a substitute attorney.' " (*Id.* at p. 90, fn. 3.) In these disapproved cases, the court had implicitly, if not explicitly, held that a defendant's expressed desire to make a new trial motion or motion to withdraw a plea on the basis of claimed ineffective assistance of counsel, without more, should be treated as triggering *Marsden* hearing requirements. (E.g., *People v. Mejía* (2008) 159 Cal.App.4th 1081, 1086.)

With that background, we find several grounds for rejecting defendant's claim. First, although the trial court sua sponte inquired into counsel's performance, it had no duty to do so under *Marsden* because defendant never gave "a clear indication" that he wanted to replace his appointed counsel. On the contrary, defendant never suggested he wanted a new attorney. In his first letter he merely contended that counsel had rendered inadequate assistance; he made no request for any specific relief. In the second letter, defendant asked for leniency in sentencing, not for new counsel. Defendant's failure to request substitute counsel, or even to suggest he wanted a new attorney, rendered *Marsden* inapposite.

Second, we find no error in the trial court's conduct of the hearing. Defendant contends the court should have more carefully explored the possibility that a language barrier caused him to misunderstand his attorney's advice. In the letters and at the hearing, however, defendant never suggested he could not understand his attorney. At that time, his claim was that counsel failed to inform him of various things, a claim that presupposes his ability to understand the things he was told. The notion that defendant might not have understood arose not with defendant but with his counsel, who made clear he was merely speculating. Further, counsel immediately refuted his own speculation, telling the court there was no indication in his conversations with defendant that he had not been understood. The court then noted, based on its own observations, that defendant

13

had skill in the use of English, further undermining any basis for counsel's speculation. Because this issue was never asserted by defendant, the necessary evidentiary predicate was never created, and the trial court did not abuse its discretion in failing to inquire further on this topic. Nor was there any evidentiary basis for finding counsel failed to render effective assistance for this reason.

Third, defendant has not demonstrated the failure to appoint substitute counsel "substantially impair[ed]" his Sixth Amendment right to counsel. (*People v. Streeter, supra,* 54 Cal.4th at p. 230.) At the time defendant raised the issue of inadequate representation, he had already been convicted. Counsel's only remaining task was to represent defendant in sentencing proceedings, and there is no indication counsel did not adequately perform this task. Defendant contends he was prejudiced if he did not understand counsel's discussion of the plea offer, but any such prejudice was not a result of the failure to grant a request for new counsel. It occurred, if at all, well prior to the purported *Marsden* hearing. Accordingly, any error under *Marsden* was harmless.

## D. *Presentence Custody Credits*

Defendant contends he was improperly denied day-for-day custody credits under Penal Code section 4019 because (1) his conviction for a serious crime, which was the basis for denying him such credits, was not pleaded and proven by admissible evidence; and (2) the 2011 amendment of section 4019 granting such credits to all defendants should be applied retroactively.

Since the filing of defendant's opening brief, both issues have been resolved against him as a matter of law by the Supreme Court. (See *People v. Lara* (2012) 54 Cal.4th 896, 906–907 [pleading and proof unnecessary]; *People v. Brown* (2012) 54 Cal.4th 314, 325, 330 [retroactivity].) Defendant does not contend otherwise in his reply brief.

14

## III.  DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Carol Yaggy

Counsel:

Charles Marson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Christopher J. Wei, Deputy Attorneys General Plaintiff and Respondent.